Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re: )
 )
ROBERT L. GILMORE, JR., and )
REAY LYNN GILMORE, ) Case No. 13-bk-1311
 )
 Debtors. ) Chapter 13
 )

## MEMORANDUM OPINION

Pending before the court is a dispute between the Debtors and their mortgagee, U.S. Bank, N.A., as Trustee for LSF8 Master Participation Trust ("U.S. Bank"), regarding the legal effect of the court's order confirming the Debtors' Chapter 13 plan. U.S. Bank asserts that the Debtors have a post-petition delinquency on their mortgage totaling $12,166.27. The Debtors and the Chapter 13 trustee contend that the Debtors are current on their mortgage, at least as of March 2019, based upon the court's order dated May 30, 2014, which confirmed the terms of the Debtors' proposed plan dated November 1, 2013.

For the reasons stated herein, the court will enter a separate order declaring the Debtors current on their obligation due and owing to U.S. Bank but also declaring that U.S. Bank's claim includes the $12,166.27 accrued during the life of the Debtors' plan.

### I. BACKGROUND

On November 1, 2013, the Debtors filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. At the same time, the Debtors also filed their proposed Chapter 13 plan of repayment. It included in Class Two payment of $1,025 their mortgagee for their on-going payment and an arrearage of $18,500. The Debtors' bankruptcy petition also triggered the issuance of the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines. Among the deadlines set was the March 20, 2014, deadline for non-governmental creditors to file proofs of

1

claim. U.S. Bank[1] timely filed its proof of claim asserting an arrearage of $25,875.40 and an on-going monthly payment of $1,378.93.

On January 8, 2014, the court entered an order continuing its consideration of the Debtors' proposed plan to May 23, 2014. Before the confirmation hearing, U.S. Bank filed a written objection to the Debtors' proposed plan. U.S. Bank's objection, however, only explicitly contested the Debtors' proposed treatment of its arrearage; the Debtors' proposal to pay $18,500 compared to the $25,875.40 in U.S. Bank's proof of claim. U.S. Bank also generally opined that the Debtors' plan failed to comply with § 1325(a)(5) of the Bankruptcy Code, but it was nonspecific in that regard. During the May 23 hearing, the Debtors noted their resolution of U.S. Bank's objection such that confirmation was ripe, and the Chapter 13 trustee generally agreed but wanted additional time to verify that confirmation of the Debtors' proposed plan was feasible and appropriate. Notably, however, there was also a discussion on the record at the May 23 hearing regarding the terms of an agreed order resolving U.S. Bank's objection. According to Debtors' counsel, U.S. Bank provided it to him shortly before the hearing. That agreed order was never tendered for entry with the court and thus is not part of the record here, and the court is unaware of its terms. Ultimately, the Debtors agreed to pay the arrearage as stated in U.S. Bank's proof of claim, and on May 30, 2014, the court entered its order confirming the Debtors' proposed plan including the $25,875.40 arrearage. However, the plan called for an on-going monthly mortgage payment of $1,025 to U.S. Bank instead of the $1,378.93 monthly payment asserted in U.S. Bank's proof of claim.

The Debtors performed under the terms of their confirmed Chapter 13 plan, and the case was relatively dormant, particularly regarding U.S. Bank's claim and its deed of trust upon the Debtors' residence. On December 13, 2018, the Chapter 13 trustee filed her Notice of Final Cure Payment consistent with Fed. R. Bankr. P. 3002.1(f). In its response filed pursuant to Fed. R. Bankr. P. 3002.1(g), U.S. Bank raised for the first time its contention that the Debtors payments to it under their plan were insufficient to maintain their mortgage. U.S. Bank thus contends that the Debtors have a post-petition delinquency of $12,166.27 resulting from the difference between

---

[1] To be clear, HSBC Mortgage Services, Inc. ("HSBC"), filed the proof of claim on behalf of Beneficial West Virginia, Inc ("Beneficial"), seemingly as servicer of the loan. During the Debtors' case, however, HSBC transferred its interest to Caliber Home Loans, Inc, as servicing agent for the trust, and Beneficial transferred its interest in the claim to U.S. Bank. To be consistent and avoid confusion in its disposition, the court references only U.S. Bank.

the on-going mortgage payment made in the confirmed plan and the amount asserted as due in the proof of claim.

## II. ANALYSIS

At bottom, the Debtors' dispute with U.S. Bank revolves around the effect of the court's order confirming the Debtors' Chapter 13 plan. U.S. Bank contends that its claim against the Debtors includes the $12,166.27 not paid during the plan despite the *res judicata* effect of the Debtors' confirmed plan. It does concede, however, that the Debtors may be deemed current on their obligation; it simply asks that the obligation going forward include the $12,166.27. In support of its position, it notes that no interested party lodged an objection to its proof of claim evidencing the monthly payment of $1,378.93. The Debtors and Chapter 13 trustee contend that U.S. Bank is barred from collecting the unpaid $12,166.27 because it did not object to the Debtors' proposed plan regarding the on-going monthly payment of $1,025 to be made by the Chapter 13 trustee thus ostensibly resulting in a shortfall. For support, they generally rely on *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), and similar authority.

This dispute presents a nuanced intersection of bankruptcy concepts: the process by which proofs of claims are allowed and treated in Chapter 13 and the effect of an order confirming a Chapter 13 plan that fails to adequately treat a secured claim during the life of the plan. First, a proof of claim "executed and filed in accordance with [the applicable Fed. R. Bankr. P.] shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). In proposing treatment for allowed secured claims, a debtor may not "modify the rights of holders of secured claims . . . secured only by a security interest in real property that is the debtor's principal residence . . . ." 11 U.S.C. § 1322(b)(2). A debtor may, however, propose a plan providing "for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5).[2] Notably, however,

---

[2] In fact, although not effective at the time the Debtors filed their case and proposed their Chapter 13 plan of repayment, the court's current model Chapter 13 plan provides the following language in Part 3.2:
> The amount of the arrearage and on-going payment listed in a creditor's timely filed and allowed claim controls over the amount listed [in the proposed plan] and such a creditor need not object to confirmation on the basis that this proposed plan does not accurately reflect the creditor's proof of claim.

3

such treatment makes the secured creditor's claim nondischargeable. *See* 11 U.S.C. § 1328(a)(1) (excepting from Chapter 13 discharge a debt provided for under § 1322(b)(5), which permits a debtor to cure a default and maintain payments on a long-term debt).

Generally, to obtain confirmation of a proposed Chapter 13 plan "with respect to each allowed secured claim provided for by the plan," the debtor must obtain acceptance of the plan, surrender the property securing the claim, or provide that, among other things, the value of the property distributed on account of such claim is not less than the allowed amount of such claim. *See* 11 U.S.C. § 1325(a)(5). Once confirmed, "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Put another way, "parties ordinarily 'may be precluded from raising claims or issues that they could have or should have raised before confirmation of a bankruptcy plan.'" *In re Russo-Chestnut*, 522 B.R. 148, 157 (Bankr. D.S.C. 2014) (quoting *In re Varat Enters., Inc.*, 81 F.3d 1310, 1314-15 (4th Cir. 1996)). At bottom, "[a] bankruptcy court's order of confirmation 'is treated as a final judgment with *res judicata* effect.'" *Id*. (quoting *In re Varat Enters., Inc.*, 81 F.3d at 1315). Notably, however, "[t]he *res judicata* effect of a confirmed plan is limited by the language of the plan." *Id.* (citing *In re Hazelwood*, 513 B.R. 323, 330-31 (Bankr. W.D. Ky. 2014)); *see In re Matteson*, 535 B.R. 156, 162 (6th Cir. BAP 2015) ("The bankruptcy court erred by interpreting the plan as requiring a reduction of the Bank's debt as a consequence of its failure to file a proof of claim when the plan itself did not specifically impose such a result and treated the debt as long-term debt.").

Having considered the parties' respective arguments and applicable legal authority, the court finds it appropriate to rule in favor of U.S. Bank. Based upon its proof of claim, U.S. Bank held an allowed secured claim totaling $218,505.03, including a pre-petition arrearage of $25,875.40. U.S. Bank's proof of claim, to which no interested party objected, reflects the arrearage and a monthly installment of $1,378.93. As outlined above, U.S. Bank's proof of claim is deemed allowed and prima facie evidence as to the validity and amount of its claim. In treating U.S. Bank's secured claim, the Debtors proposed to cure the arrearage under § 1322(b)(5) of the Bankruptcy Code and maintain their on-going payments, albeit at the lower amount of $1,025. Notably, § 1322(b)(2) prevented the Debtors from modifying U.S. Bank's rights vis-à-vis its proof

of claim, and their treatment of U.S. Bank's claim excepted the claim from the Debtors' anticipated Chapter 13 discharge based upon the terms of § 1328(a)(1).

Nonetheless, the Debtors contend that their confirmed plan providing for a lesser on-going mortgage payment to U.S. Bank operated to effectively discharge the $12,166.27 shortfall in payments that accrued during the life of the plan. Although the Debtors and Chapter 13 trustee are correct that a confirmed plan has *res judicata* effect, that effect is limited by the terms of the plan as the authority cited above holds. The Debtors' confirmed plan provided for payment to U.S. Bank at less than the monthly installment. The plan did not, however, provide for a discharge of the unpaid portion of the Debtors' obligation to U.S. Bank. The court finds the lack of such a provision to be highly dispositive.

In *Espinosa*, the Debtor's plan provided for a discharge of his student loan upon the completion of his plan payments. Specifically, Espinosa proposed "to repay only the principal on [his student loan debt], stating that the remainder—the accrued interest—would be discharged once [he] repaid the principal." *Espinosa*, 559 U.S. at 264. The Court therefore held that there was no basis to reconsider as void the order confirming the debtor's plan because United Student Aid Fund had knowledge of that provision and failed to object. *Id*. at 276. Notably, however, *Espinosa* did not hold that a debt can be discharged absent specific language in that regard simply because a creditor does not object to its treatment, or lack thereof, under the proposed plan. *See In re Reuland*, 591 B.R. 342, 350 (Bankr. N.D. Ill. 2018).

The court finds this case to be substantially like *Reuland* and finds that court's analysis highly persuasive. Here, like in *Reuland*, the Debtors' confirmed plan did not purport to discharge any portion of their obligation to U.S. Bank. Rather, the Debtors' proposed plan did not stray from the boiler plate language in the model plan regarding treatment of secured creditors. *See id*. at 349. That "stark contrast" is dispositive for the court because the Debtors' "plan is silent as to the dischargeability of the debt at issue." *See Reuland*, 591 B.R. at 349-50 (rejecting the argument that *Espinosa* held that "even if a chapter 13 plan does not address the dischargeability of a nondischargeable debt, that debt will be discharged unless the creditor objects to confirmation"). "Fundamental to [*Espinosa*] was the fact that the debtor's plan contained a specific provision regarding the discharge . . . and the creditor had received notice of the contents of the plan." *Id*. at 350. Without such a provision, U.S. Bank's claim is nondischargeable, *see* 11 U.S.C. § 1328(a)(1) (excepting from Chapter 13 discharge a debt provided for under § 1322(b)(5), which

permits a debtor to cure a default and maintain payments on a long-term debt), and *Espinosa* does not control. *Id*. at 351 (citation omitted) ("The absence of a specific, express plan provision thus deprived the creditor of 'clear, open, and unambiguous notice of any intent to discharge' the otherwise nondischargeable . . . debt")

Put succinctly, "*Espinosa* is not analogous to [this case] because the two cases involve different statutory provisions, procedural postures, and plan language." *Reuland*, 591 B.R. at 348. Indeed, the Court noted in *Espinosa* that "[§§] 1328(a) and 523(a)(8) provide that student loan debt *is* dischargeable in a Chapter 13 proceeding if a court makes a finding of undue hardship. In contrast, other provisions in Chapter 13 provide that certain other debts are *not* dischargeable under *any* circumstances." *Espinosa*, 559 U.S. at 273 n.10.

### III. CONCLUSION

Based upon the foregoing, and in accordance with Fed. R. Bankr. P. 3002.1(h), the court finds that U.S. Bank's nondischargeable claim includes the $12,166.27 not paid during the life of the Debtors' Chapter 13 plan. The court, however, also finds that the Debtors are current on their obligation to U.S. Bank, at least through February 2019, based upon their performance under their confirmed plan. Therefore, in order to harmonize the court's findings with the Debtors' payment history and their obligation going forward, the court will convene a telephonic hearing to ensure that the Debtors and U.S. Bank exit this case with reconciled payment figures.